Louella T. BRADBERRY, Individually and as Personal Representative of the Estate of Kenny Ray Thomas, deceased, et al., Plaintiffs-Appellants,

v.

PINELLAS COUNTY, Defendant-Appellee.

No. 85–3535.

United States Court of Appeals, Eleventh Circuit.

May 23, 1986.

Joseph C. Whitelock, St. Petersburg, Fla., for plaintiffs-appellants.

Joseph H. Saunders, Asst. Co. Atty., Clearwater, Fla., for defendant-appellee.

Before HILL, Circuit Judge, HENDERSON * and BROWN,** Senior Circuit Judges.

HENDERSON, Senior Circuit Judge:

This appeal involves yet another attempt to litigate a state law tort claim in federal court under the guise of a suit brought pursuant to the provisions of 42 U.S.C. § 1983. The district court dismissed this case for failure to state a claim upon which relief could be granted. Fed.R.Civ.Pro. 12(b)(6). We affirm the district court's dismissal but for reasons different than those stated by that court.

On September 5, 1983, Kenny Ray Thomas entered a non-designated swimming area off a beach in Florida near DeSoto Beach Park owned by Pinellas County (County). He apparently was heading toward a sandbar located some distance from the shore. While he was swimming toward the sandbar, he was directed by a lifeguard employed by the County to swim back to the shore. The lifeguard had been stationed at a designated swimming area not far from where Thomas entered the water. While he was heading back to the shore, Thomas tired and drowned.

On March 12, 1985, the appellants, Thomas' mother both individually and in her

---

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

capacity as the personal representative of the estate, and the half brother and sisters of Thomas, filed this action in the Middle District of Florida alleging that Pinellas County violated Thomas' constitutional rights by inadequately training its lifeguards. On June 11, 1985, the district court dismissed the complaint for failure to state a claim upon which relief could be granted because the "drowning was an isolated act and not the often repeated, constant violations that constitute custom and policy." Record Excerpts at 28 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 at n. 3 (5th Cir.1984). The appellants then filed a timely appeal to this court.

It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed.R.Civ.Pro. 12(b)(6) "unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957). The appellants in this case allege that the County violated 42 U.S.C. § 1983 because its

> policy or custom of training and employing lifeguards caused the death of Kenny Ray Thomas, deceased, *in that the said policy or custom, instituted by Defendant, Pinellas County, was grossly inadequate to insure that a sufficient number of qualified lifeguard personnel and lifesaving devices were deployed on North Beach at Fort DeSoto Park on September 5, 1983.* Said conduct constituted a gross disregard for the safety of Kenny Ray Thomas, deceased.

Record Excerpts at 5 (emphasis added).

■ Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the dep-

rivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Before a county or municipality can be held liable under Section 1983, a plaintiff must establish that he suffered a constitutional deprivation and that the deprivation resulted from an official custom or policy. *See e.g., Anderson v. City of Atlanta*, 778 F.2d 678 (11th Cir.1985).

The sole constitutional violation alleged by the plaintiffs is that contained in the fourteenth amendment's prohibition against the deprivation of life, liberty or property without due process of law. Thus, the primary issue before us is whether, assuming the truth of the plaintiffs' factual allegations, the county's failure to provide adequately trained lifeguards "deprived" Kenny Ray Thomas of his life without due process of law. We conclude that Thomas suffered no constitutional deprivation.[1]

The Seventh Circuit Court of Appeals recently decided two cases that shed significant light on the issues before us. In *Jackson v. Byrne*, 738 F.2d 1443 (7th Cir. 1984), the plaintiffs were the relatives of children who died in a fire that occurred while Chicago firemen were on strike. Striking firemen, aware of the fire, attempted to gain access to one of the city's firestations but were not allowed to do so by local police who were acting under orders promulgated by the Mayor. The court of appeals held that the plaintiffs could not recover under Section 1983 from city officials because "[a]lthough there were deaths in this case, the state did not, within the meaning of the fourteenth amendment, 'deprive' plaintiffs' decedents of life. The fire killed (the children), government officials did not." *Id.* at 1446. The court went on to hold that the city had no constitutional obligation to provide firemen and there-

---

1. Because of this conclusion, we need not address whether the plaintiffs' complaint alleges an unconstitutional custom or policy. We note that the recent Supreme Court opinion in *Daniels v. Williams*, — U.S. —— 106 S.Ct. 662, 88

L.Ed.2d 662 (1986), explicitly left open the question of whether § 1983 liability can be predicated upon gross negligence. This difficult matter we leave for another day.

fore could not be held liable for their failure to respond because of the strike. *Id.* at 1446–1447. The court also rejected the plaintiffs' argument that the city acquired a continuing constitutional duty to provide fire services once it established itself as the provider of such services because the adoption of such a position "would open the way for scrutiny by the federal courts of virtually every municipal decision to reallocate protective resources. Neither the fourteenth amendment nor Section 1983 was meant to give the federal courts such a role." *Id.* at 1447.

■ In the present case, the plaintiffs alleged that the County deprived their decedent of his life without due process of law by failing to adequately protect him from his unauthorized swim off the Florida coast. Their contention that the County was grossly negligent by not having enough qualified lifeguards on duty on the day of Thomas' death presupposes an obligation on the part of the County to provide lifeguards. We agree with the Seventh Circuit Court of Appeals, however, that because counties and municipalities have no constitutional obligation to provide such protective services, they cannot be held liable when someone is injured because of a lack of such services.[2] Therefore, the appellants' argument that Pinellas County can be held liable under § 1983 for not providing a sufficient number of lifeguards on the beach where Thomas drowned is without merit.

The appellants also allege that Pinellas County deprived Thomas of his life without due process of law by inadequately training the lifeguard who instructed Thomas to swim back to shore. They maintain that this inadequate training proximately caused Thomas' death because he would not have drowned had the lifeguard been

trained properly. For the purposes of our inquiry at this stage of the proceedings, we must, of course, accept the truth of the appellants' allegations.

In *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983), two people were trapped inside a burning car that had swerved off a road. A few minutes later, a policeman arrived at the scene but he did not attempt to determine whether the car was occupied. Instead, he called the fire department and directed traffic away from the burning car. Subsequently, other policemen arrived at the scene of the accident but they also did not help either of the people in the car. Eventually an ambulance was called but one of the occupants of the car was already dead and the other one died at the hospital. The decedents' relatives filed a Section 1983 suit against the police officers, their superiors, and the city alleging that the decedents would not have died had the officers aided them in getting out of the car, had not prevented other potential rescuers from saving them, or had tried to put out the fire themselves. The *Jackson* court held that the complaint's allegations did not state valid claims under Section 1983.

The *Jackson* court began with the premise that there is no common law duty to rescue a stranger, but once someone attempts to rescue a person in danger he must do so in a non-negligent manner. *See* Restatement (Second) of Torts § 323 (1965). This general maxim, however, is not grounded in the Constitution but in state tort law. The *Jackson* court then concluded that a negligent or grossly negligent rescue attempt by a state employee is not the equivalent of a deprivation of right to life without due process of law. The court stated:

> Court has held that jail officials have a constitutional duty not to be deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In the present case, however, there was no special relationship between Kenny Ray Thomas and Pinellas County that required the county to protect him from drowning off the Florida coast.

---

2. The court in *Jackson* recognized, as do we, that there are times when the Constitution requires local governmental units to provide basic protective services to individuals with whom the government has created a special relationship. For example, jails and mental hospitals must be administered so that their occupants are housed in a safe manner. *See e.g. Spence v. Staras,* 507 F.2d 554 (7th Cir.1974). And, the Supreme

If the defendants deprived the plaintiffs' decedents of anything it was of some right to competent rescue services. But, as we have been at pains to stress, there is no such right in the Fourteenth Amendment. Of all the forms of state oppression of the individual that which consists of trying but failing to assist at accidents must rank very low. It is not 'oppression' at all; it is essentially inaction; and it was remote from the concerns of the framers of the Fourteenth Amendment.

*City of Joliet, supra* at 1205. Based on this analysis, the appeals court held that the plaintiffs' complaint did not state a claim under § 1983 because the decedents suffered no constitutional deprivation.

 In the present case, the plaintiffs alleged that Pinellas County was grossly negligent because it inadequately trained lifeguards and one of those lifeguards proximately caused the death of Kenny Ray Thomas. We find that, on these facts, this allegation is insufficient to state a claim under Section 1983. It is beyond peradventure that § 1983 did not make every tort committed under color of state law actionable in federal court. *Paul v. Davis,* 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1161, 47 L.Ed.2d 405, 412–13 (1976). Pinellas County's alleged failure to adequately train its lifeguards may have been one of the causes of Kenny Ray Thomas' death, but it did not deprive him of any right secured by the federal Constitution. In any accident case involving the public highways, the skies, or even bodies of water, the injured party can always argue that a better equipped and better trained public safety system could have averted the injuries. *See City of Joliet, supra,* at 1205. But, the federal Constitution does not require states to expend their resources to guard against such accidents, and therefore it would be anomalous to hold them

liable when they attempt to do so and fail in their effort. *See Byrne, supra* at 1447.

Kenny Ray Thomas was not placed in a position of danger by officials of Pinellas County. He was imperiled by his voluntary act and an agent of the county attempted, unsuccessfully, to save him from that risk.[3] Therefore, this case is distinguishable from the situation where a municipality is alleged to have grossly negligently trained one of its agents who then takes affirmative action causing injury to an innocent bystander. Whether such an allegation is sufficient to state a claim under 42 U.S.C. § 1983 is a question that we do not reach here. We simply hold that a local governmental body does not deprive a person of his right to life for purposes of 42 U.S.C. § 1983 when it grossly negligently trains one of its agents who then fails in an attempt to rescue that person from an existing peril not created by the governmental agency.

 This distinction, between situations where the state actively places someone in danger and where the state fails to help someone already exposed to risk, is consistent with the well established notion that the Constitution limits the actions the states can take rather than mandating specified obligations. *Joliet, supra,* at 1203. *See generally, Harris v. McRae,* 448 U.S. 297, 318, 100 S.Ct. 2671, 2688, 65 L.Ed.2d 784 (1980). The Constitution, as opposed to local tort law, does not prohibit grossly negligent rescue attempts nor even the grossly negligent training of state officers. Rather, it prohibits the deprivation of life, liberty, or property without due process of law. Although the state might be prohibited by the Due Process Clause from actively taking the life of a citizen through grossly negligent behavior, we do not believe that due process is implicated when the state fails to help someone al-

---

**3.** At oral argument, plaintiffs' counsel suggested that the deceased may not have been in peril when the lifeguard directed him to swim back to the shore. This allegation, however, is not contained in the complaint. Rather, the only statement in the complaint relating to the lifeguard's action is that she "failed to use sound

judgment in *directing Kenny Ray Thomas to safety.*" Record Excerpts at 4. (Emphasis added.) As discussed earlier in our opinion, a negligent or grossly negligent failure to rescue a person already in danger, without more, does not amount to a constitutional deprivation.

ready in danger. To hold otherwise, we would have to read into the Constitution the tort law principle that a rescue, once begun, must be carried out with due care. We decline to take such an extreme step.

Our holding is consistent with the recent Fifth Circuit Court of Appeals decision in *Rankin v. City of Wichita Falls, Texas,* 762 F.2d 444 (5th Cir.1985). In *Rankin,* the plaintiffs were the parents of a young man who was killed when he attempted to rescue a female co-worker at a municipal treatment plant. He tried to save her from falling off a ledge near a water tank, but he lost his balance and fell into the tank and drowned. The plaintiffs brought an action under Section 1983 contending that the customs and practices of the City of Wichita Falls were grossly negligent in that the City's plant contained numerous safety deficiencies which proximately caused the death of their son. The court, assuming the truth of the plaintiffs' allegations, held that the complaint failed to state a cause of action under Section 1983 because it did not allege the "sort of abuse of government power necessary to elevate an ordinary tort claim to constitutional status." *Id.* at 449. The court's holding was not based on the degree of fault alleged, but rather the absence of an allegation of "the abuse of any peculiar authority or obligation held by the government." *Id.* The court concluded that it could not equate tort law violations committed by state actors with constitutional deprivations and dismissed the plaintiffs' complaint.

■ It might be argued that the grossly negligent training of state agents who may be confronted with life endangering situations constitutes sufficient "abuse of governmental power" to satisfy the requirements of Section 1983. Such a holding would be inconsistent with the decisions in *Joliet* and *Rankin.* We need not, however, resolve this precise issue because even if Pinellas County's alleged gross negligence did rise to the level of the requisite abuse of governmental power, the complaint in

this case would still fail as a matter of law because Pinellas County did not create the peril which led to Kenny Ray Thomas' death. The state did not kill Kenny Ray Thomas, the ocean did. And, even if the lifeguard's attempted rescue of Kenny Ray Thomas heightened the peril he faced, such conduct, which may amount to a tort cognizable under *state* law, does not constitute a *constitutional* deprivation of life without due process of law. *See City of Joliet, supra,* at 1205.

■ The fourteenth amendment was designed to protect people from arbitrary coercion by state governments. *City of Joliet, supra,* at 1204. It has not been expanded to require the states to provide basic services to its citizens. In this case, Kenny Ray Thomas may have been deprived of those services, but he was not subjected to a deprivation of any rights secured by the Constitution. Therefore, the complaint fails to state a claim under 42 U.S.C. § 1983 and the district court's judgment dismissing this case is

AFFIRMED.[4]

---

**4.** Because of our disposition of this case, we need not address the question of whether the

appellants' claims in this case fail because of the existence of adequate state remedies.