Emma Yaiza DIAZ; Ebony Roberts; Andre Neal Bembry; American Federation of Labor and Congress of Industrial Organizations; American Federal of State, County and Local Employees, AFL–CIO; Florida Public Employees Council 79, AFSCME, AFL–CIO; and Service Employees International Union, AFL–CIO, Plaintiffs,

v.

Glenda HOOD, Secretary of State of Florida; Brenda Snipes, Broward County Supervisor of Elections; John Stafford, Duval County Supervisor of Elections; Constance Kaplan, Miami–Dade Supervisor of Elections; Bill Cowles, Orange County Supervisor of Elections; and Theresa Lepore, Palm Beach County Supervisor of Elections, Defendants.

No. 04–22572–CIV.

United States District Court,
S.D. Florida.

Oct. 26, 2004.

Mary Jill Hanson, Hanson, Perry & Jensen, P.A., West Palm Beach, FL, Judith A. Browne, Sheila Y. Thomas, Elizabeth Westfall, Advancement Project, Washington, DC, Steven S. Michaels, S. Gale Dick, Debevoise & Plimpton LLP, New York, NY, Elliot Mineberg, People for the American Way Foundation, Judith A. Scott, John J. Sullivan, Seiu, Jonathan P. Hiatt, AFL–CIO, Washington, DC, Manny Anon, Jr., Florida Public Employees Council 79, Tallahassee, FL, for Plaintiffs.

Jeffrey P. Ehrlich, Susan Torres, Miami–Dade County Attorney's Office, Juan Enjamio, Daniel S. Fridman, Hunton & Williams LLP, Miami, FL, George N. Meros, Jr., Peter Antonacci, Grayrobinson, P.A., Richard Perez, General Counsel, Department of State, Tallahassee, FL, Eddie G. Labrador, Broward County Assistant Attorney, Governmental Center, Fort Lauderdale, FL, Tracey I. Arpen, Jr., Ernst D. Mueller, Deputy General Counsel, Duval County, Jacksonville, FL, Mike Cirullo, Orange County Attorney's Office, Fort Lauderdale, FL, Leon St. John, Palm Beach County Attorney's Office, West Palm Beach, FL, Ronald A. Labasky, Landers & Parsons, P.A., Tallahassee, FL, Matthew Cohen, Broward County Attorney's Office, Burnadette NorrisWeeks, Burnadette Norris–Weeks, P.A., Ft. Lauderdale, FL, for Defendants.

### ORDER DISMISSING COMPLAINT

JAMES LAWRENCE KING, District Judge.

Plaintiffs seek a declaration of their rights to be registered to vote in the November 2, 2004 election, based upon the Constitution and laws of the United States and of the State of Florida.[1]

1. This Complaint is time-stamped by the Clerk of Court as having been filed on October 13, 2004 at 4:22 p.m.

The suggestion that Plaintiffs have been denied their right to vote because of a mistaken interpretation of the election laws of Florida is limited in this case, to persons seeking to register to vote between the opening of registration and October 4, 2004. Another limitation is that Plaintiffs only seek legal interpretation of the alleged wrongful denial of their applications to vote in the five (5) counties of Miami–Dade, Broward, West Palm Beach, Orange and Duval.

## I. *FACTUAL BACKGROUND*

Plaintiffs, Emma Diaz (Miami–Dade County resident), Ebony Roberts (Duval County Resident), and Andre Bembry (Duval County resident), are all United States citizens over the age of eighteen. They have never been convicted of a crime, or been adjudicated mentally incompetent. Plaintiffs, American Federation of Labor and Congress of Industrial Organizations, American Federation of State, County and Municipal Employees, Florida Public Employees Council 79, and Service Employees International Union ("Union Plaintiffs") represent numerous working men and women throughout the State of Florida.

The Complaint challenges the process in which voter registration applications were processed and either granted or denied by the supervisors of elections in Broward, Duval, Miami–Dade, Orange, and Palm Beach Counties ("County Defendants").[2] In addition to the supervisors of elections, Plaintiffs assert claims against the Secretary of State of Florida, Glenda Hood, in relation to her responsibilities as Chief Elections Officer of the State of Florida.

Plaintiffs seek injunctive relief requiring the respective Supervisor of Elections to add the name of those individuals who submitted incomplete voter registration applications to vote in the upcoming November 2nd general election. Plaintiffs argue that these individuals should be permitted to vote if they fall within any of the following circumstances: (1) when the citizenship box (are you a citizen) was left blank but the application's verification was signed;[3] (2) when the felon box (are you a felon without voting rights restored) was not marked, but the application was signed; (3) when the mental capacity box (are you adjudicated mentally incompetent or if so, have voting rights been restored) was not marked but the application was signed; (4) when the identification number (drivers license, Florida identification or last four digits of a social security number) was not provided on the application but the application was signed.

The deadline for registering to vote in the November 2, 2004 general election was October 4, 2004.[4] Plaintiffs allege that Defendants have violated federal and state law by refusing to register eligible voters because of non-material errors or omissions in their voter registration applications; failing to provide any notice to voter applicants whose registration applications were deemed incomplete; failing to pro-

---

**2.** The named supervisors of the aforementioned counties are Brenda Snipes (Broward County), John Stafford (Duval County), Constance Kaplan (Miami–Dade County), Bill Cowles (Orange County), and Theresa Lepore (Palm Beach County).

**3.** The application's verification states as follows: "I do solemnly swear that I will protect and defend the Constitution of the United States and the Constitution of the State of Florida. I am qualified to register as an elector under the Constitution and laws of the State of Florida. I am a U.S. Citizen. I am a legal resident of Florida. All information on this form is true. I understand that if not true, I can be convicted of a felony of third degree and fined up to $5,000 and imprisoned for up to five years."

**4.** § 97.055(1), Fla. Stat. (voter registration books close twenty nine days before the election).

vide an opportunity to submit the missing information; failing to provide such notice and opportunity in time to allow the applicants to submit the missing information prior to the deadline for registering to vote in the November 2nd general election; and by applying varying standards in determining the eligibility of voters within and between counties.

Defendants, relying on Florida Statute § 97.052(2), assert that supervisors of elections have deemed voter registration applications incomplete if any single box (or all boxes) of citizenship, felon, and mental capacity are left blank, or if identification numbers are not provided.[5] Duval and Broward Counties have apparently made an exception regarding signed applications with the citizenship box left blank.

## II. *PROCEDURAL HISTORY*

Contemporaneously with filing the Complaint, Plaintiffs sought a hearing on their Motion for Expedited Case Management, wherein they asked that their application for preliminary injunction against the state officials, whom they believe unlawfully disqualified them from registering as voters for the forthcoming election, be merged with and considered with a trial on the merits of their application for permanent final injunctive relief.

This was quickly followed by Plaintiffs' Motion for Expedited Discovery (filed October 14, 2004) seeking to take the deposition of Secretary of State Glenda Hood, a first request for production of documents from the Defendant Election Supervisors of the five counties involved,[6] and Plaintiffs' Motion for Preliminary Injunction (or Preliminary Injunction and Trial on the Merits) filed October 13, 2004.[7] It asked the Court to order the Defendants to register these applicants as qualified voters eligible to vote in the November 2, 2004 election. The following day the Court immediately set for hearing on October 15, 2004 at 10:00 a.m., the motion for expedited case management treatment. At this hearing, oral argument were presented by all parties and a case management plan was decided upon which would permit the parties to (within the limits of the time deadline of the election) express their positions and to have an orderly opportunity to reach a timely decision.

Clearly the old adage, "justice delayed is justice denied," was quickly discerned by all the attorneys and the Court to be par-

---

**5.** Section 97.052(2) lists specific items of information that must be elicited on the Uniform Statewide Registration Application. Among those items of information are the four that are at issue in this case, as follows: (1) whether the applicant is a United States Citizen, § 97.052(2)(c); (2) whether the applicant has been convicted of a felony, or, if so, whether the applicant has had his or her rights restored; § 97.052(2)(s); (3) whether the applicant has been adjudicated mentally incapacitated for purposes of voting or, if so, whether the applicant has had his or her right to vote restored; § 97.052(2)(t); (4) Florida Driver's License or Florida Identification Card Number [§ 97.052(2)(n)], or the last four numbers of the applicant's Social Security Number. [§ 97.052(2)(m)].

**6.** "Plaintiffs wanted the number of voter registration forms deemed to be incomplete from June 1, 2004 to the filing of the Complaint, the race and ethnicity of all applicants deemed incomplete, the number of forms not yet processed, notices sent by the Supervisors to applicants of incomplete filings and the written policies and procedures regarding the processing of the applicants."

**7.** This motion (filed October 13, 2004) for injunctive relief asked the Court to order the Defendants to "... deem complete all voter registration applications postmarked by October 4, 2004 but on which the applicant did not check any or all of the citizenship felony status or mental capacity boxes or did not provide a Florida driver's license number or the last four digits of a social security number."

ticularly true when considering the issues raised by this important litigation. The absolute deadline for a resolution of these issues was literally "set in concrete" by the November 2, 2004 general election. It also became abundantly clear from the statements of the respective attorneys for the Defendants, that if a decision was not rendered within a sufficient number of days prior to the November 2nd election, that any Order regardless of the outcome, would be impossible to perform due to the passage of time.

Accordingly, an Order on Case Management evolved out of the various arguments and the Court, at the conclusion of the hearing, orally announced rulings establishing a briefing schedule and document and deposition discovery that was consistent with what the parties believed was achievable and reasonable.

The following day the Court set a hearing to consider oral argument on the perspective motions and briefs yet to be filed, for Friday, October 22, 2004. Pursuant to this Order, the parties were asked to be prepared to argue, both the motions to dismiss that were yet to be filed and the application for preliminary injunction. This extraordinary procedure was arrived at because of the inflexible deadlines imposed by the imminency of the forthcoming election, which were completely beyond anyone's control.[8]

On October 21, 2004, Plaintiffs filed an Amended Complaint with the Clerk of this Court that substantially altered the factual allegations and issues from those of the original Complaint.[9] Defendants, Miami–Dade County and Secretary of State Hood, filed motions at approximately 4:40 p.m. on the afternoon of October 21, 2004 to strike the Amended Complaint. The Court was unaware of the filing of an Amended Complaint until receipt of Defendants' Motion to Strike.[10]

The motions to strike the Complaint by the two Defendant referenced above was couched in the alternative; namely, to strike or, if the Court accepted the Amended Complaint as filed, to then permit defense counsel a fair opportunity to re-brief the motions to dismiss and arguments incident thereto that had already been filed on October 21, 2004 at 9:00 a.m. addressing the original Complaint.

The Court had not had the benefit of a responsive pleading from Plaintiffs as to the motions to strike or for additional time to address the new issues and time for this, of course, in fairness to Plaintiffs, had to be provided. The Court heard from Plaintiffs (and all parties) respecting the issues raised in the defense motions as a first priority at the already scheduled hearing on October 22, 2004, at the conclusion of which Plaintiffs withdrew the filed Amended Complaint.

8. The Court takes this opportunity to express its admiration of all counsel to this litigation who, in a splendid spirit of cooperation, acceded to the pragmatic suggestions of the Court for a fair and timely resolution.

9. This was withdrawn by Plaintiffs and stricken by Court order, after oral argument on October 22, 2004.

10. Calls to the Clerk's Office disclose that a proposed Amended Complaint had in fact been filed and would be delivered to the judge in about twenty (20) minutes from the Clerk's main office a block away. By the time the proposed Amended Complaint was delivered and the Court had time to review it in conjunction with the Motion to Strike of Dade County, another Motion to Strike filed by Defendant Secretary of State Hood was either delivered or faxed in to chambers. The proposed Amended Complaint and the motion of the Secretary of State arrived at approximately 5:00 p.m.

Leave for permission to file an amended complaint on the eve of the 9:30 a.m., October 22, 2004 oral argument on pending motions to dismiss the original Complaint was not filed or sought.

Whereupon oral argument as originally scheduled on the issue of the defense motions to dismiss the original Complaint and the application for preliminary injunction were held.

### III. *STANDARD OF REVIEW*

A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief. "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir.1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir.1986) (citation omitted).

### IV. *DISCUSSION*

#### A. *The Alleged Grounds for Dismissal*

Defendants filed separate motions to dismiss the Complaint and memoranda of law in opposition to the Plaintiffs' motion for preliminary injunction. The motions to dismiss propound various theories of law that, while overlapping in some ways, are not completely duplicative and vary based on the different status of each defendant.

Defendant Hood and all the County Defendants argue that the Union Plaintiffs lack standing to sue because the Union Plaintiffs have not identified any individual member of their respective associations who were injured by Defendants' challenged conduct. Defendants jointly allege that the rejection of individual applications did not injure Union Plaintiffs.

Separately, Defendant Hood argues that the individual Plaintiffs lack standing to challenge the Citizenship–Box–requirement because none of the three individual Plaintiffs allege a failure to check the "Citizenship Box"; Plaintiffs do not satisfy the causation element of standing; and the Secretary of State has no legal authority to redress the alleged harm done to Plaintiffs.

Defendants Orange County, Broward County and Palm Beach County also contend that Plaintiffs lack standing to prosecute their claims against them because no individual Plaintiff (or a named Union member) is alleged to be a resident of, attempted to register to vote in, or was rejected as unqualified to vote in, their respective counties. Additionally, Defendant Duval County argues that Plaintiff Roberts lacks standing because her application was approved and she is registered to vote in Duval County.

Defendant Hood makes five additional arguments. First, based on Plaintiffs' alleged delay in filing their claim and for other reasons of equity, including the doctrine of laches, the Court should refuse to entertain Plaintiffs' Complaint. Second, Plaintiffs fail to state a claim under 42 U.S.C. § 1983 because they did not allege "willful conduct" on Defendants part to "undermine the organic processes" of the election system. Third, Plaintiffs fail to state a claim under the Voting Rights Act of 1965 because they do not allege Defendants acted with discriminatory intent or sufficiently allege that a protected minority group was excluded from the political process based on community bias. Fourth, Plaintiff's fail to state a claim that their fundamental right to vote has been

denied because the challenged conduct was reasonable. Fifth, Plaintiffs failed to join indispensable parties because any relief that does not involve all 67 Florida counties will violate the equal protection clause.

County Defendants Duval, Miami–Dade and Broward assert separate, additional bases for dismissal. Broward County argues that the Complaint fails to state a claim because it does not specifically allege how the Supervisor of Elections failed to conform to the election law. Miami–Dade argues that the Complaint is defective because it fails to specifically identify which claims are brought against the Supervisor. Finally, Duval County argues that it is not a party to the case since it has not been served and will not waive the service of process requirement.

**B. Standing**

▆▆▆▆ Before reaching the merits of any case, a federal court has the duty to inquire into the court's subject matter jurisdiction, including whether the plaintiffs have standing to bring the action. *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999). To establish Article III standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal link between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103–04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Plaintiffs raise two potential grounds for invoking this Court's jurisdiction: (1) associational standing and (2) individual standing.

**1. Associational Standing**

▆▆▆▆ Even in the absence of an injury to itself, an association may have standing as the representative of its members. *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A plaintiff claiming such standing must establish: (1) that at least one of its members could have sued in his or her own right; (2) that the interests sought to be protected are related to the association's purpose; and (3) that the individual member is not indispensable to the litigation. *Hunt v. Wash. St. Apple Adver. Com'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Generally, a failure to identify a single injured constituent prevents an organization from asserting associational standing. *Nat'l Alliance for the Mentally II, St. Johns Inc., v. Bd. of County Comm'rs of St. Johns County,* 376 F.3d 1292, 1296 (11th Cir.2004).

▆▆▆▆ Union Plaintiffs have failed to allege sufficient facts to establish that one of their members could have brought this case in their own behalf. The Unions do not identify a single individual member residing in any of the Defendant Counties whose registration ballot was rejected, or allege with any degree of specificity how their members were personally injured by the Defendants. Plaintiffs merely state that they "bring suit on behalf of their individual members in [Defendant] Counties, who have been aggrieved by Defendants' failure to comply with federal constitutional and federal statutory guarantees and provisions relating to voting and who have standing to sure in their own right." (Compl. at p. 7.) The Court cannot determine from this generalized allegation that any of the Unions' members were in fact injured by Defendants'

challenged action. Finding an injury to a Union member, based on the allegations of this Complaint, would be to indulge in impermissible conjecture. There is no allegation that any Union member attempted to register to vote and had his or her application rejected by the County Defendants. The allegations made by Union Plaintiffs are insufficient to give the Court jurisdiction.

Plaintiffs argued during the hearing on the motions to dismiss that it is not necessary for organizations to identify specific members that are injured by the challenged conduct. In support, Plaintiff directed the Court to *Church of Scientology v. Cazares,* 638 F.2d 1272, 1276–80 (5th Cir.1981), wherein the Eleventh Circuit permitted the Church of Scientology to represent its individual members' rights, despite the fact that no allegation with respect to any specific member was made. *Cazares* is inapposite, however, because the allegedly defamatory conduct "challenged in the complaint *uniformly affected the entire membership* of the Church." 638 F.2d at 1280 (emphasis added). In the instant case, the alleged challenged conduct does not affect all the members of the Unions. In fact, the Complaint does not identify any single member who was injured by Defendants' conduct.

### 2. *Individual Standing*

Three individual Plaintiffs, (1) Emma Diaz, (2) Andre Bembry, and (3) Ebony Roberts also seek relief. The Court will address each individual Plaintiffs' standing in turn.

### (a) *Emma Diaz*

■ Plaintiff Diaz, a resident of Miami–Dade County, Florida, alleges that she filled out a voter registration application outside the Miami Convention Center on September 17, 2004. The Supervisor of Elections for Miami–Dade County received the application on September 23, 2004. Ten days later, Diaz received a letter from Supervisor Kaplan dated October 3, 2004, informing her that her application was incomplete because she had failed to check the box indicating whether she had ever been declared mentally incapacitated. The letter was accompanied with a pre-paid return envelope, and invited Diaz to provide the missing information needed to complete her voter registration application. Diaz did not send the amended application back to complete her application.[11]

According to the allegations of this Complaint, Supervisor Kaplan followed the law regarding notice and opportunity to correct the infirmity. Within a period of ten days, Kaplan notified Diaz that her application was incomplete, and provided her with the opportunity to correct it. No federal or state statute prescribes a time period within which a supervisor must notify an applicant that her application is incomplete, nor do Plaintiffs cite any law that would provide such time periods. Kaplan properly notified Diaz of her failure to complete her registration application, and Diaz did not provide any authority in her Complaint that would have required Kaplan to handle Diaz's incomplete application differently. Diaz created her own injury.

Plaintiff Diaz has failed to allege facts sufficient to establish her standing to pros-

---

11. Florida Law, § 97.073 of the Florida Statutes requires the supervisors of elections to "notify each applicant of the disposition of the applicant's voter registration application." If the application is incomplete, "the supervisor must request that the applicant supply the missing information in writing and sign a statement that the additional information is true and correct." *Id.*

ecute her claims against Secretary of State of Florida Glenda Hood. There is no allegation in the Complaint that the Secretary of State has the authority to order the Defendant Supervisors of Elections to correct any of the alleged wrongful act of rejection of the incompletely filled out applications to register to vote. Therefore, the second and third prongs of the *Lujan* test have not been established; namely, (1) a causal connection between the alleged injury and any conduct or act by the Defendant Secretary of State; or (2) that the Defendant Secretary of State could redress any alleged injury asserted by Diaz' Complaint.

Under *Lujan*, Diaz lacks standing to prosecute her claims against Snipes (Broward County), Stafford (Duval County), Cowles (Orange County), and Lepore (Palm Beach County). Diaz has made no allegations that she is a resident of, or attempted to register to vote in, any of these respective Counties.

#### (b) *Andre Bembry*

Plaintiff Bembry is a resident of Duval County, Florida. Bembry alleges that he completed his voter registration application at a Church in Jacksonville, Florida. Subsequently he received a letter dated October 2, 2004 from the Supervisor of Elections, Defendant Stafford, informing him that his voter registration application was rejected because he failed to check the "not-a-felon-box" (confirming that he was not convicted of a felony whose voting rights were not restored).

█ When applying *Lujan* to Bembry's allegations, Bembry (as a resident of Duval County) could only sue Duval County's Supervisor of Elections Stafford. The Court finds that Bembry's claim against Stafford must be dismissed because Stafford complied with his duty to inform Bembry that his application was incomplete and he failed to respond.

Stafford's efforts were in compliance with Florida Law as set forth above. Section 97.073 provides that if an applicant's application is incomplete, they are to be provided notice of their incomplete application. Fla. Stat. § 97.073. Bembry was notified that his application was incomplete, and he had the opportunity to complete his application up until October 18, 2004, 14 days after the voter registration deadline. There are no allegations in Plaintiffs' Complaint that Stafford did anything but what Florida law requires. Supervisor Stafford adhered to substantive federal and state law in handling the incomplete application, and reasonably complied with the notification of incompleteness requirements.

For the same reasons asserted above, Plaintiff Bembry lacks standing to prosecute his claims against Defendant Hood. He does not allege that the Secretary of State could require the Supervisor of Elections Defendants to undertake any of the alleged wrongful acts, or to undertake any future acts in the nature of Plaintiff Bembry's requested relief. Bembry has failed to satisfy the second and third prongs under the *Lujan* test.

Under *Lujan*, Plaintiff Bembry lacks standing to prosecute his claims against Snipes (Broward County), Kaplan (Miami–Dade County), Cowles (Orange County), and Lepore (Palm Beach County). Bembry has made no allegations that he is a resident of, or attempted to register to vote in, any of these respective Counties. Therefore, Bembry has failed to allege that there is a causal connection between his alleged injury and the aforementioned Defendants' conduct.

#### (c) *Ebony Roberts*

█ Plaintiff Roberts is a resident of Duval County, Florida, who alleges that on August 16, 2004, she submitted her voter registration application one-and-a-half

months before the deadline for the November 2nd general election. On October 5, 2004, Roberts received a letter from Stafford's office informing her that her voter registration application was rejected because she did not provide the last four digits of her social security number. Roberts was told she would not be eligible to vote in the upcoming November 2nd general election, unless she re-submitted her application by 5:00 p.m. on October 5th (amended to October 18, 2004). Roberts timely amended her application and is registered to vote. Plaintiff Roberts does not have standing on the allegations of this Complaint since under the *Lujan* test, she has suffered no injury.

## V. *CONCLUSION*

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the Motions to Dismiss the Complaint be, and the same are hereby, GRANTED WITHOUT PREJUDICE to file an Amended Complaint within twenty (20) days hereof.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 26th day of October, 2004 at 12:45 p.m.