115 F.3d 707
 97 Cal. Daily Op. Serv. 4285, 97 Daily Journal
D.A.R. 7173
Maria PENILLA, Michael Penilla; Juan Penilla, by and
through Maria Penilla administratrix estate,
Plaintiffs-Appellees,
v.
CITY OF HUNTINGTON PARK, Defendant,
and
Joseph Settles; Ioane Tua, Defendants-Appellants.
 No. 95-56254.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 10, 1997.
Decided June 6, 1997.
 
 Steven N. Skolnick, Santa Monica, CA, for defendants-appellants.
 Danilo J. Becerra, Moreno, Becerra & Guerrero, Montebello, CA, for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California; Richard A. Paez, District Judge, Presiding. D.C. No. CV-95-03237-RAP.
 Before FLETCHER and TROTT, Circuit Judges and JENKINS,* District Judge.
 OPINION
 PER CURIAM.
 
 
 1
 In the late morning of May 15, 1994 Juan Penilla ("Penilla") was on the porch of his home in Huntington Park, California.[1] He became seriously ill. His neighbors and a passerby called 911 for emergency medical services, and attempted to assist Penilla until emergency services arrived. Huntington Park Police Officers Settles and Tua arrived first. The officers examined Penilla, found him to be in grave need of medical care, cancelled the request for paramedics, broke the lock and door jamb on the front door of Penilla's residence, moved him inside the house, locked the door, and left at approximately 11:30 a.m. The next day, family members found Penilla dead on the floor inside the house. He died as a result of respiratory failure.
 
 
 2
 One year later, Maria Penilla, the decedent's mother, Michael Penilla, the decedent's brother, and decedent's estate brought an action against the City of Huntington Park, its police department, its chief of police, and officers Settles and Tua ("the officers") alleging violations of 42 U.S.C. § 1983 and pendent state tort claims.[2] Officers Settles and Tua appeal the district court's denial of their Fed.R.Civ.P. Rule 12(b)(6) motion for dismissal on the basis of qualified immunity. Because immunity is an entitlement to immunity from suit, rather than a defense to liability, its denial is immediately appealable. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review a district court's decision on qualified immunity in a 42 U.S.C. § 1983 action de novo. Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994). The Supreme Court's grant of appellate jurisdiction under Mitchell is narrow. Because the officers have moved for qualified immunity on a motion to dismiss, we decide only whether defendants' alleged conduct violated clearly established constitutional rights. Todd v. United States, 849 F.2d 365, 369 (9th Cir.1988). Thus, following Mitchell and Todd we confine our review to the qualified immunity issue.
 
 
 4
 In order to be entitled to qualified immunity, the officers must show that their discretionary conduct did not violate any clearly established rights of which a reasonable person should have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A public official is not entitled to qualified immunity when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.1994).
 
 
 5
 On appeal we do not determine the merits of appellees' claim that the officers' conduct actually violated clearly established statutory or constitutional rights. Mitchell, 472 U.S. at 528-29, 105 S.Ct. at 2816-17. "All [we] need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions...." Id. at 528, 105 S.Ct. at 2816. The officers are entitled to dismissal on the basis of qualified immunity only if, viewing the facts in the light most favorable to appellees, the facts as alleged do not support a claim that they violated clearly established law. Id. at 528, n. 9, 105 S.Ct. at 2816, n. 9.
 
 
 6
 The officers argue that they are entitled to qualified immunity because there is no clearly established constitutional right to emergency medical care for persons not in custody and because there is no clearly established constitutional requirement that police officers must obtain a warrant before "helping a collapsed man off of his front porch and into his home." We disagree with their characterization of the rights involved.
 
 
 7
 I. Violation of Penilla's Fourteenth Amendment Rights
 
 
 8
 Appellees' first cause of action alleges a Fourteenth Amendment violation, the deprivation of Penilla's life without due process of law. The officers assert that they owed Penilla no constitutional duty to provide medical care and that even if they did owe him such a duty, they did not cause his death.
 
 
 9
 Although the 14th Amendment does not generally require police officers to provide medical assistance to private citizens, DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989) (holding that the due process clause does not generally confer affirmative rights to governmental aid, even where such aid may be necessary to secure life), when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim. See L.W. v. Grubbs, 974 F.2d 119 (9th Cir.1992), cert. denied, 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) (concluding a valid section 1983 claim existed against a supervisor at a state facility who placed plaintiff in danger by assigning her to work with an inmate sex offender who had a history of violent assaults against women; he subsequently raped and kidnapped her); Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (concluding that a valid section 1983 claim existed against a state police officer who caused a woman to be stranded in a high-crime area at night where she was subsequently raped).
 
 
 10
 Appellees do not allege that these officers attempted, but failed, to rescue Penilla, or even that they should have, but did not, attempt to rescue him. Their allegation is that the officers placed Penilla in danger in deliberate indifference to his medical needs.
 
 
 11
 The officers attempt to characterize this case as similar to situations in which § 1983 liability has been rejected for police officers' and firefighters' conduct during failed rescues or in situations where they did not affirmatively cause harm. See, e.g., Jackson v. Byrne, 738 F.2d 1443, 1448 (7th Cir.1984) (firefighters not liable for death of children during firefighters' strike); Bradberry v. Pinellas County, 789 F.2d 1513, 1514-15, 1518 (11th Cir.1986) (no liability for lifeguard because "[t]he state did not kill [decedent], the ocean did.").
 
 
 12
 We agree with the district court that these cases are inapposite. The officers in this case allegedly took affirmative actions that significantly increased the risk facing Penilla: they cancelled the 911 call to the paramedics; they dragged Penilla from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone. And they allegedly did so after they had examined him and found him to be in serious medical need.
 
 
 13
 The cause of Penilla's death is a factual issue, undeveloped on this record. The officers' alleged conduct, however, clearly placed Penilla in a more dangerous position than the one in which they found him. We agree with the district court that by cancelling the 911 call, removing Penilla from public view, and locking the front door, the officers made it impossible for anyone to provide emergency medical care to Penilla.
 
 
 14
 The officers argue that under DeShaney, a constitutional duty to provide care is only triggered when a person is in custody. We reject this argument. The Court in DeShaney did not focus upon custody, but rather upon the role that the state played in creating or enhancing the danger the victim faced. There, the Court reasoned that "[w]hile the State may have been aware of the dangers that [the victim] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." DeShaney, 489 U.S. at 201, 109 S.Ct. at 1006.
 
 
 15
 We have interpreted DeShaney to mean that if affirmative conduct on the part of a state actor places a plaintiff in danger, and the officer acts in deliberate indifference to that plaintiff's safety, a claim arises under § 1983. In Grubbs we explained:
 
 
 16
 DeShaney did not rule that custody was required where the state affirmatively causes the harm.... DeShaney thus suggests that had the state created the danger, [plaintiff] might have recovered even though he was not in custody.
 
 
 17
 Grubbs, 974 F.2d at 121; see also Wood, 879 F.2d at 588. The critical distinction is not, as appellants allege, an indeterminate line between danger creation and enhancement, but rather the stark one between state action and inaction in placing an individual at risk.
 
 
 18
 II. Violation of Penilla's Fourth Amendment Rights
 
 
 19
 Appellees allege that the officers violated Penilla's Fourth Amendment rights when they broke the lock on the door and entered his house without either express consent or a warrant. The district court held that whether the warrantless entry was justified on the basis of exigent circumstances was a question of fact which could not be resolved on a 12(b)(6) motion and denied the officers qualified immunity on this basis. We agree.
 
 
 20
 Appellees have alleged sufficient facts to support their allegations of unlawful intent: specifically, that the officers broke down the door of an empty home and left Penilla there, after they had determined that he was in dire need of care. See Branch v. Tunnell, 14 F.3d 449, 452 (9th Cir.1994) (requiring a heightened pleading standard for § 1983 cases where knowledge or intent is an element of the plaintiff's constitutional tort); Alexander v. City and County of San Francisco, 29 F.3d 1355 (9th Cir.1994) (reversing summary judgment for defendants on Fourth Amendment claim because a genuine dispute existed as to why defendants ordered the storming of a house).
 
 
 21
 The emergency aid doctrine, relied upon by the officers, allows police to enter a dwelling without a warrant only to render aid to a person whom they reasonably believe to be in distress. See, e.g., U.S. v. Dunavan, 485 F.2d 201 (6th Cir.1973) (no Fourth Amendment violation where officer attempting to assist unconscious man made unconsented warrantless entry into his locked briefcase). It cannot, on its face, justify the entry made here: Penilla was outside the dwelling when the police broke down his door and moved him inside. No emergency aid was given; instead of rendering aid, the officers entered Penilla's home and thereby prevented him from receiving the aid that had already been requested by others.
 
 
 22
 III. Violation of Maria Penilla's Fourteenth Amendment Rights
 
 
 23
 The district court found that because appellants were not entitled to qualified immunity for the violation of Penilla's due process rights, Maria Penilla could pursue her own rights under the Fourteenth Amendment for deprivation of her liberty interest in her familial relationship with her son. Appellee Maria Penilla died during the pendency of this appeal. Accordingly, we do not reach the issue of what rights survive her death.
 
 IV. Conclusion
 
 24
 We affirm the district court's denial of qualified immunity to the officers. Taking all material facts alleged as true, they violated clearly established rights of which a reasonable person should have known. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738 (1982). The law at issue in this case was clearly established on May 15, 1994, when the alleged constitutional violation occurred. In 1992, we held that the custody of the victim is not a prerequisite for a § 1983 action brought against state actors when their affirmative actions place an individual in danger. Grubbs, 974 F.2d at 121. Under Grubbs, a state actor in this circuit has a constitutional duty under the due process clause to protect an individual where the state places that individual in danger through affirmative conduct. See also Wood, 879 F.2d 583, 589-590 (9th Cir.1989). It is also well established that warrantless entries into private homes are per se unreasonable unless they fall within narrowly recognized exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
 
 
 25
 The district court's denial of appellants' motion to dismiss on the basis of qualified immunity is AFFIRMED.
 
 
 
 *
 Honorable Bruce S. Jenkins, Senior United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 This appeal arises from the district court's denial of appellants' 12(b)(6) motion to dismiss. Accordingly, we take as true the facts alleged in the appellees' complaint, although they are only allegations at this stage
 
 
 [2]
 The district court granted the motion to dismiss the claims of Michael Penilla because the Ninth Circuit has rejected a cognizable liberty interest in sibling companionship. See Ward v. City of San Jose, 967 F.2d 280, 283-284 (9th Cir.1992). This decision is not at issue in this appeal