BROWNING, Circuit Judge.
Defendant Noel Shields appeals the district court’s ruling that he is not entitled to summary judgment against Plaintiff Kimberly Kennedy’s 42 U.S.C. § 1983 claim. He argues that his alleged conduct did not violate Plaintiffs clearly established constitutional rights. We disagree, and conclude the district court correctly determined that Shields is not entitled to qualified immunity. Accordingly, we affirm the decision below.

I. Introduction

. Kimberly Kennedy’s § 1983 action against Ridgefield City and Ridgefield Police Officer Noel Shields stems from events occurring on September 24, 1998, when a thirteen year-old neighbor, Michael Burns, shot and killed her husband Jay Kennedy and severely wounded her. .
On September 6, 1998, Kennedy called the Ridgefield Police Department (“RPD”) and alleged that Michael Burns had molested Kennedy’s nine-year-old daughter, Tera Teufel. RPD Officer Shields responded to the call.
Kennedy claims to have warned Shields of Michael Burns’s violent tendencies at the September 6 meeting. Kennedy insists that during their initial meeting, she told Shields that the Burns family was unstable and that she had seen a lot of violence in their home. She alleges that she went on to describe several violent incidents involving Angela Burns, Michael’s mother. Kennedy also claims she informed Shields that Michael Burns had been involved in a number of violent incidents, including fights at school, lighting a cat on fire, breaking into his girlfriend’s house and attacking her with a baseball bat, and throwing rocks at a building in downtown Ridgefield.
Kennedy also alleges that during the September 6 meeting, Shields assured her that she would be given notice prior to any police contact with the Burns family about her allegations. Shields stated that he could not recall whether Kennedy asked to be notified prior to any contact by the authorities with the Burns family.
Shields forwarded his report to the Child Abuse and Intervention Center (“CAIC”) following the September 6 meeting. It is undisputed that Shields had no contact with Kennedy between the September 6 meeting and September 24, the night of the shooting.
Kennedy alleges that on several occasions, she inquired into the status of the investigation of Michael Burns and reminded officers to notify her prior to any contact with the Burns family. She learned that Michael Burns had been investigated for sending death threats to a classmate, but that the investigation concluded that he was not responsible. Kennedy asserts- that she expressed concerns about her safety and told the CAIC officer handling the investigation that she was anxious to have the investigation started.
On September 24, 1998, Kennedy called both Shields and the CAIC to inquire into the progress of the investigation. Kennedy left a message for Shields. The content of this message is disputed. Shields stated that when he arrived at work on Sep *1139 tember 24, there was a message from Kennedy inquiring about his contact with Angela Burns and the status of the molestation case. Shields’s account clearly contradicts Kennedy’s repeated testimony that she asked the RPD and CAIC to notify her prior to any contact with the Burns family. After receiving Kennedy’s message, Shields called the CAIC to inquire into the status of the investigation. The officer responsible for the case was out so Shields left a message.
Shields decided to drive to the Kennedy house and inform Kennedy personally that he called the CAIC but did not know the status of the case. Shields stated that he did not call Kennedy before driving to her house. On the way to the Kennedy house, Shields changed his mind and decided to go to the Burns’s residence first. He reasoned that it was on the way, and he could thus determine whether the Burns family had been contacted and so inform Kennedy. Shields talked to Angela Burns and informed her of Kennedy’s allegations.
After speaking with Angela Burns, Shields proceeded to the Kennedy house. When he arrived, Shields told Kennedy that he had informed Angela Burns of the molestation allegations. Kennedy became upset and asked Shields why he had contacted the Burns family prior to notifying her and told Shields that she was in fear for her safety. Kennedy alleges that Shields assured her that the police would patrol the area around her and Michael’s house to keep an eye on him.
After Shields left, Kennedy called a Mend because she was very Mghte'ned of what Michael and Angela Burns’s reaction would be. According to Kennedy, Shields told her Angela Burns was very angry after their conversation and Angela and Michael Burns began yelling at one another. Kennedy also alleges that her husband decided to stay the night at home because Shields had promised to patrol the premises. They planned to lock the doors to the house and leave town early the next morning. Kennedy also stated that she did not call 911 that night because she relied upon Shields’s promise to patrol the area.
Early on the morning of September 25, 1998, Michael Burns broke into the Kennedy house and shot Jay and Kimberly Kennedy while they slept. Jay Kennedy died as a result of his injuries. Michael Burns was convicted of the premeditated murder of Jay Kennedy and attempted premeditated murder of Kimberly Kennedy.
Kennedy brought a lawsuit against Shields and Ridgefield City, among others, in Clark County Superior Court asserting several state causes of action and a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment. The case was removed to the United States District Court for the Western District of Washington. On March 13, 2003, Shields and Ridgefield City moved for summary judgment. The court granted summary judgment to the defendants on all state law claims and to Ridgefield City on Kennedy’s § 1983 “failure to train” claim.
The court denied Shields’s motion for summary judgment based on qualified immunity. The district court concluded that viewing the facts in a light most favorable to plaintiffs, “a jury could find that Officer Shields unreasonably created a false sense of security in plaintiffs by agreeing to give plaintiffs advanced notice of advising the Burns family of the allegation that Michael Burns sexually molested Tera Teufel, and assuring the plaintiffs of a neighborhood patrol.” Order, p. 4-5. This interlocutory appeal followed.

II. Analysis

This ease presents two legal issues. First, we must consider whether this Court has jurisdiction over Shields’s inter *1140 locutory appeal concerning his qualified immunity defense. If so, we must then determine whether Shields is entitled to qualified immunity under the facts of this case.
We review de novo an interlocutory appeal from the denial of-.summary judgment based on qualified immunity. Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir.2003). In reviewing a summary judgment order in a § 1983 action where the district court determines that “the defendant’s alleged conduct violated the plaintiffs clearly established constitutional rights ... we resolve all factual disputes in favor of the plaintiff....” Cunningham v. City of Wenatchee, 345 F.3d 802, 807 (9th Cir.2003).
A. Jurisdiction over Qualified Immunity Claims on Interlocutory Appeal
In response to Shields’s interlocutory appeal, Kennedy argues first that this Court lacks jurisdiction. We disagree, and conclude that we have jurisdiction 'to determine whether the trial court erred in holding that Shields was not entitled to qualified immunity.
As a general rule, interlocutory appeals from determinations of qualified immunity are permissible. In Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that the denial of a defendant’s motion for summary judgment is immediately appealable where the defendant is a public official asserting the defense of qualified immunity and the issue appealed concerns whether the facts demonstrated a violation of clearly established law,
Kennedy correctly notes that the 'Court created an exception to this general rule in Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). There, the Court held that “a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court’s-summary judgment order insofar as that' order determines whether or not the pretrial record sets forth a ‘genuine’ issue of facts for trial.” Id. at 319-20, 115 S.Ct. 2151. In ruling against- Shields’s motion for summary judgment based on his claim of qualified immunity, the trial court stated:
Viewed in a light most favorable to plaintiffs, a jury could find that Officer Shields unreasonably created a false sense of security in plaintiffs by agreeing to give plaintiffs advance notice of advising the Burns family of the allegation that Michael Burns had sexually molested Tera Teufal, and assuring the plaintiffs of a neighborhood patrol.... In essence there is a question of fact as to whether or not there was justifiable reliance by plaintiffs on the alleged promises by Shields.
Order at 4-5. Thus, the trial court’s order observes that issues of fact remain.
This does not, however, suffice to deprive us of jurisdiction under Johnson. In a subsequent ease, the Supreme Court explained:
Denial of summary judgment often includes a determination that there are controverted issues of material fact, see Fed. Rule Civ. Proc. 56, and Johnson surely does not mean that every such denial of summary judgment is nonap-pealable. Johnson held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case.... Johnson reaffirmed that summary judgment determinations are appealable when they resolve a dispute concerning an ‘abstract issu[e] of law* relating to qualified immunity ... typically, the issue whether the federal right allegedly infringed was ‘clearly established.’
Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). See *1141 also Knox v. Southwest Airlines, 124 F.3d 1103, 1107 (9th Cir.1997) (“[W]e have jurisdiction over an interlocutory appeal from the denial of qualified immunity where the appeal focuses on whether the defendants violated a clearly established law given the undisputed facts, while we do not have jurisdiction over an interlocutory appeal that focuses on whether there is a genuine dispute about the underlying facts.”).
Unlike the appeal in Johnson, we are not asked or required to look at the sufficiency of the evidence in support of the factual claims made by the parties, i.e., Shields’s contention that he did not create a false sense of security and Plaintiffs insistence that he did. See Johnson, 515 U.S. at 313, 115 S.Ct. 2151 (holding that some orders denying summary judgment, “though entered in a ‘qualified immunity’ case, determine[ ] only a question of ‘evidence sufficiency,’ ie., which facts a party may, or may not, be able to prove at trial. This kind of order, we conclude, is not appealable.”).
Here, while the trial court concluded that issues of fact remain, those disputed facts are not the basis of Shields’s interlocutory appeal of the denial of qualified immunity. Rather, Shields’s appeal contends that even after resolving the issues of fact in Plaintiffs favor, the Plaintiff will not have demonstrated that Shields violated a clearly established constitutional right. Because this question represents an “abstract issue of law relating to qualified immunity” it falls within our jurisdiction on interlocutory appeal.
Assuming the facts as alleged by Plaintiff, we must determine whether the Defendant violated Plaintiffs constitutional rights and whether those rights were clearly established. If Shields’s conduct did not violate Plaintiffs clearly established constitutional rights, he is entitled to qualified immunity. We now turn to those questions.
B. Application of Qualified Immunity to Officer Shields
We conclude that Shields’s conduct, as alleged by Plaintiff, violated her constitutional rights. Furthermore, we conclude that the constitutional rights violated by Shields’s alleged conduct were clearly established at that time.
 In Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court established a two-prong analysis for qualified immunity cases. First, a court must determine whether the facts alleged (resolving all disputes of fact in favor.of the party asserting the injury) show that the officer’s conduct violated a constitutional right. “Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right? This must be the initial inquiry.” Saucier, 533 U.S. at 201, 121 S.Ct. 2151. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.
If, however, the court determines that the conduct did violate a constitutional right, the second prong under Saucier requires the court to determine whether the violated right was “clearly established.” A right is clearly established if the “contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id. (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Even if the violated right is clearly established, the Saucier Court recognized that it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he or she faces. The Saucier Court therefore held that if the officer makes a mistake in applying the relevant legal doctrine, he or she is not precluded *1142 from claiming qualified immunity so long as the mistake is reasonable. That is, if “the officer’s mistake as to what the law requires is reasonable ... the officer is entitled to the immunity defense.” 533 U.S. at 205, 121 S.Ct. 2151. We now take up those questions.
1. First Prong: Did Shields Violate Kennedy’s Constitutional Rights?
The Plaintiff alleges that the Defendant violated her 14th Amendment right to substantive due process under the “state-created danger” doctrine. In DeShaney v. Winnebago County Dep’t of Soc. Serv., 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that the Due Process Clause “is phrased as a limitation on the State’s power to act, not as a guarantee of certain minimal levels of safety and security.” Since the Due Process Clause does not require the state to provide its citizens with a minimum level of security, it follows that the state cannot be held liable for failing to do so. Id. at 196-97, 109 S.Ct. 998.
Two exceptions to DeShaney exist. Under the “special relationship” doctrine, the state can be held liable for a third party’s harm where the state has custody over the plaintiff. Under this exception, “ ‘when the State takes a person into its. custody and holds him there against his will, the Constitution imposes some responsibility for [that person’s] safety and general well-being.’ ” Wang v. Reno, 81 F.3d 808, 818 (9th Cir.1996) (quoting DeShaney, 489 U.S. at 199-200, 109 S.Ct. 998). Here, Plaintiff does not allege that Shields ever had custody over her or her husband; consequently, this exception is inapplicable.
The “state-created danger” doctrine represents the second recognized exception to DeShaney’s rule against holding state officials liable for private violence. Under this theory, plaintiffs can recover “when a state officer’s conduct places a person in peril in deliberate indifference to their safety.” Penilla v. City of Huntington Park, 115 F.3d 707, 709 (9th Cir.1997). This Circuit first recognized liability based on state created danger in Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989). In Wood, a state trooper determined that the driver of an automobile was intoxicated, arrested the driver and impounded the car. The officer left Wood, a passenger in the car, stranded late at night in a high-crime area. Wood accepted a ride from a passing car and was subsequently raped. This Court held that Wood could claim § 1983 liability, since there was a genuine issue of fact “that[the trooper] acted with deliberate indifference to Wood’s interest in personal security under the fourteenth amendment.” Id. at 588.
Since Wood, this Circuit has held state officials liable for the creation of danger in a variety of circumstances. In L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir.1992), this Court found that state employees could be liable for the rape of a registered nurse assigned to work alone in the medical clinic of a medium-security custodial institution with a violent sex offender. In Munger v. City of Glasgow, 227 F.3d 1082 (9th Cir.2000), this Court found that police officers could be held liable for ejecting a visibly drunk patron from a bar on a bitterly cold night.
To find an officer liable under the “state-created danger” theory, a plaintiff must show that the officer’s actions created or increased the danger facing him or her. Second, the plaintiff must demonstrate that the state official acted with deliberate indifference to a known or obvious danger. Interpreting the facts in a manner most favorable to Plaintiff, we conclude that Shields did in fact augment the *1143 danger Plaintiff and her husband faced and acted with deliberate indifference to a known or obvious danger. Plaintiff has therefore demonstrated that her constitutional rights were violated and so satisfied the first prong under Saucier.
a. Danger Affirmatively Created or Increased Due to State Action
First, Shields’s affirmative actions placed the Kennedy family in a situation of danger greater than they would have faced had he not acted at all. Shields does not dispute that the revelation to Michael Burns’s mother of the allegations of sexual abuse against Michael Burns triggered his actions against Plaintiff and her husband. In revealing the existence of allegations against Michael to Angela Burns after having promised Kennedy that he would notify her first, Shields created a situation of heightened danger. It was inevitable that Michael Burris would eventually learn of the allegations made against him, and he would likely infer who had made them. If Kennedy had received the prior warning officer Shields promised her, she and her family could have taken additional precautions. Instead, they relied on Shields’s promise of advance notification and so considered additional precautions unnecessary.
Moreover, Shields further augmented this danger by. offering false assurances that the police would patrol the Kennedy’s neighborhood the night of the shooting. Misrepresentation of the risk faced by a plaintiff can contribute to a finding of state-created danger. See Grubbs, 974 F.2d at 121 (“The Defendants also enhanced L.W.’s vulnerability to attack by misrepresenting to her the risks attending her work.”). Plaintiff alleges that she and her husband based their decision to remain at home that night and leave in the morning in reliance on Shields’s assurances that the neighborhood would be patrolled. Defendant’s affirmative promise of a police patrol thus influenced Plaintiffs assessment of the risk she and her family faced.
b. Deliberate Indifference
Second, resolving all factual disputes in Plaintiffs favor, Shields acted with deliberate indifference. “ ‘[Deliberate indifference’ is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions.” Bryan County v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). See also Christie v. Iopa, 176 F.3d 1231, 1240 (9th Cir.1999). Here, Plaintiff has alleged that the consequences of Shields’s actions were obvious: first, that once informed of the allegations against him, Michael Burns would attempt to harm the Kennedy family; and second, that having been assured by Shields’s promise to provide police protection, the Kennedy family would rely upon that promise.
Resolving factual disputes in Kennedy’s favor, the record supports her assertion that Shields should have recognized the obvious consequences of his actions. Most significantly, Plaintiff specifically asked Shields to give her advance notification because she feared for the safety of her family. In addition, Plaintiff herself had previously informed Shields of Michael Burns’s violent tendencies, including an incident in which Michael Burns had broken into a girlfriend’s home. Shields also knew of a separate investigation in which school authorities suspected (albeit erroneously) that Michael Burns sent death threats to another student. Finally, on the night of the attack, Plaintiff informed Shields directly that he had placed her family in danger by informing the Burns family of the allegations against Michael prior to notifying the Kennedy family. *1144 Under these circumstances, the obvious consequence of informing Angela Burns prior to the Kennedy family and of falsely assuring the Kennedy family of police protection was to increase the risk the Kennedy family faced from Michael Burns.
2. Second Prong: Was the Right Violated Clearly Established?
When all the factual issues are resolved in Plaintiffs favor, we find Shields’s alleged conduct violated Kennedy’s constitutional rights. We turn to the second prong of the Saucier test, and consider whether the constitutional right violated by Shields’s conduct was “clearly established” in September 1998. We conclude for the reasons set out below that it was. To determine whether a right is clearly established, the reviewing court’s inquiry must consider whether a reasonable officer would recognize that his conduct violates that right under the circumstances and in light of the law that existed at that time. As the Supreme Court explained:
For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.
Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal citations omitted); see also Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1136-37 (9th Cir.2003) (“In order to find that the law was-clearly established ..: we need not find, a prior case with identical, or evén ‘materially similar’ facts.”). Thus, the alleged conduct need not explicitly have been previously deemed unconstitutional, but existing case law must make it clear that the conduct violated constitutional norms. Moreover, “[t]he plaintiff bears the burden of showing that the right at issue was clearly established under this second prong.” Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir.2002).
In September of 1998, it was clearly established that state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger. In 1989, this Court recognized the theory of state-created danger in Wood. However, it is not enough to claim that a constitutional right was clearly established in its broad outlines. First, “the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.” Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The appropriate level of specificity must take into account the actual circumstances of the case, for the inquiry into whether the right is clearly established “must be undertaken in light of the specific context of the case, not as a broad general proposition.” Saucier, 533 U.S. at 201, 121 S.Ct. 2151. In Saucier, the Court rejected the idea that the plaintiff could defeat the defendant’s claim of qualified immunity merely by demonstrating that use of force violates the Fourth Amendment if it is excessive under objective standards of reasonableness.
Kennedy may not defeat Shields’s claim of qualified immunity merely by demonstrating that police actions violated the Fourteenth Amendment if they affirmatively created or enlarged danger facing a plaintiff and did so with deliberate indifference. To satisfy her burden and demonstrate that Shields violated a clearly established constitutional right, Plaintiff must go further. “The salient question *1145 .... is whether the state of the law [at the time of the alleged wrong] gave respondents fair warning that their alleged treatment of [the petitioner] was unconstitutional.” Hope, 536 U.S. at 741, 122 S.Ct. 2508. That is, Kennedy must demonstrate, based on the state of the law in 1998, that Shields was on notice that informing Angela Burns of Kennedy’s allegations prior to warning the Kennedy family and falsely promising a police patrol that evening would violate Kennedy’s constitutional rights. Resolving all factual disputes in her favor, we conclude that Kennedy has met this burden. Consequently, we hold that Shields is not entitled to have his motion for summary judgment on the basis of qualified immunity.
Both of Kennedy’s claims against Shields amount to verbal promises that were relied upon and then not kept. This Court has previously held officers liable under a state-created danger doctrine where they falsely induce reliance by promising additional protection or warnings. In Grubbs, 974 F.2d 119, a registered nurse working at a medium security custodial institution was raped and terrorized by a young male inmate. The nurse brought a § 1983 claim against her supervisors. According to the plaintiff, her employer had told her she would not be working alone with violent sex offenders. Notwithstanding that representation, her employer subsequently allowed an inmate prone to violence against women to work with her unsupervised. The plaintiff, relying upon that representation, did not take all the precautions she might otherwise have taken, and was subsequently raped.
The Grubbs Court recognized that cognizable state-created harm claims may arise where state officials induce reliance by means of verbal promises that are later broken. In Grubbs, the plaintiff obviously recognized that she faced some risk, because she was working in a custodial institution with male offenders. She did not realize, however, that the defendants would place her in close unsupervised proximity with an individual with a history of violence against women. It was in part because the conduct of the defendants increased the risk she faced without her knowledge that the Grubbs Court found them to have violated her constitutional rights. “Defendants ... enhanced L.W.’s vulnerability to attack by misrepresenting to her the risks attending her work.” Id. at 121. Thus, the Grubbs Court concluded that officials may be held liable where they claim to offer protection they do not provide and so misrepresent the risk posed by third-parties to a plaintiff. Consequently, Shields’s conduct violated Plaintiffs clearly established constitutional right.
Like the plaintiff in Grubbs, Kennedy was aware of the underlying risk, yet reasonably underestimated it based on Shields’s representations. His alleged conduct both increased and misrepresented the risk that Michael Burns posed to Kennedy and her family. Shields purportedly told Kennedy that he would warn her before telling the Burns family of the allegations against Michael Burns, and then failed to do so. Furthermore, Kennedy has also alleged that Shields falsely told her that he would patrol her neighborhood the night the allegations against Michael Burns were revealed to his family. If either or both of these allegations were proved at trial, a jury could reasonably find Kennedy relied upon such promises of additional protection in evaluating the risks Michael Burns posed to her family. Furthermore, under the circumstances alleged by Plaintiff, Shields would have acted unreasonably in promising pri- or notification and additional police protection, inducing reliance, and then failing to perform.

*1146
III. CONCLUSION

Under Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), we have jurisdiction to hear Shields’s interlocutory appeal regarding qualified immunity. We conclude that Shields unreasonably violated Kennedy’s clearly established constitutional right. Under the state-created danger doctrine, a police officer may be liable for actions that create or augment known or obvious dangers. Here, Shields’s actions both increased and misrepresented the risk Plaintiff faced. Under Grubbs, increasing and misrepresenting a known risk may give rise to § 1983 liability. This doctrine was clearly established by the time the events of this case took place. Accordingly, the trial court’s denial of Shields’s motion for summary judgment based on qualified immunity is hereby
AFFIRMED.