**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEPH TOMADA, | No. 12-15310 |
| Plaintiff - Appellant, | D.C. No. 2:10-cv-00856-GEB-DAD |
| v. | |
| MARK SIMONSON, Officer, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., Senior District Judge, Presiding

Submitted December 4, 2013**
San Francisco, California

Before: TROTT, THOMAS, and MURGUIA, Circuit Judges.

Joseph Tomada appeals from the district court's grant of summary judgment

in Tomada's 42 U.S.C. § 1983 action regarding personal injuries that Tomada

sustained during an altercation with two men. We affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

"As a general rule, members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties." L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992). But "danger creation," or "affirmative conduct on the part of the state in placing the plaintiff in danger," is an exception to the general rule. Id.

The undisputed facts fatally undercut Tomada's claims that Officer Simonson affirmatively placed him in danger by ordering him to walk down a deserted dark road "in the same direction that the knife-wielding assailants were traveling," where he was accosted by them and seriously injured.

After Tomada's assailants left the vicinity of the bar and were followed by Officer Simonson, Tomada did not directly go back into the bar, retrieve his sister, and walk down the street "as ordered." In fact, Tomada went back into the bar for no more than 10 minutes. Then, he and his sister stood outside the bar while they smoked cigarettes. Five minutes later they walked down First Street. While they were walking, Tomada heard Bilbrey and Becchio—"the two guys with the knife"—yelling profanities at them, and Tomada responded with taunts of his own.

Notably, when Tomada and his sister emerged from the bar, Officer Simonson was sitting in his car, and he said nothing to them. As far as Officer Simonson knew, because he had ordered a cab for Bilbrey and Becchio, they were

no longer in the vicinity. Judge Burrell was correct when he said, Tomada's "bare assertion and unsupported conclusion does not contain facts sufficient to support" his claim that Officer Simonson knew that Tomada's would-be assailants had a knife, and ordered Tomada to walk down a dark, deserted street towards his assailants. Among other deficiencies in Tomada's evidentiary case is the lack of reliable evidence that Officer Simonson ordered Tomada to walk in the same direction as the thugs. In separating the players, Officer Simonson said, "let those guys walk that way, you go that way, otherwise everyone here is looking at a drunk in public." The only fair inference is that Officer Simonson, who was attempting to separate the "groups," was pointing in different directions. The inference under these circumstances that he was pointing all of them in the same direction is utterly illogical.

Unlike the cases upon which Tomada relies, Officer Simonson did not (1) leave Tomada stranded in a high crime area, Wood v. Ostrander, 879 F.2d 583, 588 (9th Cir. 1989); (2) eject him from a bar in freezing temperatures and prevent him from reentering the bar or driving away, Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1087 (9th Cir. 2000); or (3) cancel paramedics and leave him alone when he needed medical attention, Penilla v. City of Huntington Park, 115 F.3d 707, 710 (9th Cir. 1997).

We resolve this case on the basis of an absence of proof of a substantive due process violation. Therefore, we do not reach qualified immunity. But that doctrine, if applicable, would demand summary judgment in favor of Officer Simonson.

AFFIRMED.